IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SEN ZHANG,<br><br>    Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT,<br><br>    Defendants. | Case No. 1:24-cv-08739<br><br>Hon. Judge Jorge L. Alonso<br><br>Hon. Magistrate Judge Jeannice W. Appenteng |

**DEFENDANT #24 TITITEX'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISSOLVE PRELIMINARY INJUNCTION AND LIFT ASSET RESTRAINT**

Defendant #24 Tititex ("Tititex"), by and through its counsel, respectfully moves this Honorable Court to dissolve the preliminary injunction dated October 16, 2024 (Dkt. 65) because Plaintiff Sen Zhang ("Plaintiff") failed to satisfy the exacting requirements of obtaining preliminary injunctive reliefs.

    **I.**    **BACKGROUND**

For the sake of brevity, Tititex hereby adopts the detailed background underlying the preliminary injunction has been laid out in defendant #5 Gibelle's recent motion to dissolve temporary restraining order and opposition to Plaintiff's motion for preliminary injunction ("Gibelle's Motion and Opposition"). *See* Dkt. 88-1 at pp. 1-5. However, it is worth noting certain facts specific to Tititex.

First, like Gibelle., Tititex is also a victim of extensive cybersquatting activities likely carried out by Plaintiff or someone on his behalf. *See* CHEN Decl. at ¶¶ 21-26; WANG Decl. at ¶¶ 4-21. Specifically, coinciding with several of Plaintiff's key activities in this action, an actor

currently unknown to Tititex registered various domain names ("Fake Tititex Sites") using Tititex's business name and federally registered trademarks without Tititex's knowledge or permission. CHEN Decl. at ¶¶ 21-26; Ex. 17. Although the Fake Tititex Sites are portraited as legitimate websites associated with Tititex, they all list fake phone numbers, email addresses and addresses. CHEN Decl. at ¶ 24; WANG Decl. at ¶¶ 4-20. The unauthorized creation and update of the Fake Tititex Sites matches the pattern of cybersquatting activities against defendant Gibelle. *Compare* WANG Decl. at ¶¶ 4-21 *with* Dkt. 85-19 at ¶¶ 8-20.

Second, Tititex sold the accused products under a license purchased by its operational service provider Ningbo HeYuan Textiles Co., Ltd. ("HeYuan") from Shutterstock.com ("Shutterstock") as early as April 25, 2022 and only made a limited amount of sales. CHEN Decl. at ¶¶ 3-12. Yet, the preliminary injunction imposed a *complete* asset restraint of *all funds* (which far exceed Tititex's actual revenue from the accused products) in Tititex's Amazon account regardless of the source of the funds. CHEN Decl. at ¶¶ 15-17.

Notably, at the time of Plaintiff's Motion for Preliminary Injunction, Plaintiff *already knew* Tititex's sales data of the accused products and the total balance in Tititex's Amazon account. *See* Dkt. 26 at p. 6 (confirming that "Since entry of the TRO, through expedited third-party discovery ordered by the Court, Plaintiff *has obtained information concerning* Defendant Internet Stores' infringing activity" including "*account balance information* for payment accounts containing proceeds from infringing sales, *and sales data* for infringing Defendant Internet Stores")(emphasis added). Nevertheless, Plaintiff intentionally withheld such information from this Court while falsely representing that "The Equitable Relief Previously Granted *Remains Appropriate*" and that "Plaintiff's damages . . . *far exceed* the sums contained in Defendants' restrained accounts." *Id.* at pp. 6-7 (emphasis added).

Finally, it is worth emphasizing again that, the underlying original work ("Original Work")—from which the work asserted by Plaintiff ("Asserted Work") was copied—was published on Shutterstock for licensing *long before* Plaintiff's registration of the Asserted Work. CHEN Decl. at ¶¶ 7, 11-12. The demonstrative **Exhibit A** submitted as part of Gibelle's Motion and Opposition shows the relationship between the Original Work and the Asserted Work. Dkt. 88-2.

## II. ANALYSIS

### a. Legal Standard

For the sake of brevity, Tititex hereby adopts the "Legal Standard" section in Gibelle's Motion and Opposition. Dkt. 88-1 at p. 5.

### b. Plaintiff Failed To Meet Any Of The Four Legal Prerequisites For Obtaining Preliminary Injunctive Relief.

#### i. Plaintiff Is Not Likely To Succeed On The Merits.

##### 1. Plaintiff Has Failed To Establish His Ownership In The Asserted Work And Thus Lacks Standing To Sue.

For the sake of brevity, Tititex hereby adopts the relevant discussion on the same issue in Gibelle's Motion and Opposition. Dkt. 88-1 at pp. 6-8. Tititex further notes that the Shutterstock Content Proof of License submitted currently herewith by Tititex corroborates the licenses already submitted by other defendants in showing that the copyright in the Original Work presumptively resides with the original "Contributor" on Shutterstock, i.e., "Nikiparonak." *See* Ex. A to CHEN Decl.; Dkts. 88-4, 85-21, 61-2.

##### 2. Plaintiff Does Not Own A Valid Copyright Because The Asserted Work Lacks Originality and Is Not Copyrightable.

For the sake of brevity, Tititex hereby adopts the relevant discussion on the same issue in Gibelle's Motion and Opposition. Dkt. 88-1 at pp. 8-10.

### 3. There Is No Willful Infringement Because Tititex Has Been Operated Under A License To The Original Work Since April 25, 2022.

On April 25, 2022, Tititex's store operations service provider HeYuan purchased from Shutterstock an ongoing Standard Image License ("Standard License") to the Original Work specifically in preparation for subsequent use on behalf of Tititex. CHEN Decl. at ¶¶ 7-12. Notably, the agreement between Shutterstock and any image contributor (*e.g.*, "Nikiparonak") states that "Licenses issued by Shutterstock for any Content that is later removed from the Shutterstock Websites *will remain in full force and effect in perpetuity*." Dkt. 88-1 at p. 11. Therefore, the Standard License "*will remain in full force and effect in perpetuity*." HeYuan and Tititex believed in good faith that the Standard License adequately covered all of the intended used on behalf of Tititex. CHEN Decl. at ¶ 10. Without any evidence of willfulness or bad intent on the part of Tititex, Plaintiff has failed to carry his heavy burden of persuasion as to his willful infringement claim.

In sum, Plaintiff has failed to carry his heavy burden of establishing that he is likely to succeed on the merits.

### ii. There Is Adequate Remedy At Law, And Plaintiff Has Not And Will Not Suffer Irreparable Harm in the Absence of the TRO Or Preliminary Injunction.

For the sake of brevity, Tititex hereby adopts the relevant discussion on the same issue in Gibelle's Motion and Opposition. Dkt. 88-1 at pp. 11-15.

### iii. The Balance Of Hardship Tips In Tititex's Favor.

For the sake of brevity, Tititex hereby adopts the relevant discussion on the same issue in Gibelle's Motion and Opposition except that Tititex's substantial financial loss and severe operational disruptions to its business suffered as a result of the TRO and preliminary injunction

3

is supported by the declaration of its operations manager Mr. Chen. Dkt. 88-1 at p. 15; *see* CHEN Decl. at ¶¶ 13-20.

### iv. The TRO and Preliminary Injunction Are Not In The Public's Interest.

For the sake of brevity, Tititex hereby adopts the relevant discussion on the same issue in Gibelle's Motion and Opposition. Dkt. 88-1 at p. 15.

In sum, given Plaintiff's failure to meet any of the four prerequisites of obtaining preliminary injunction, the preliminary injunction should be dissolved.

### c. The Preliminary Injunction Should Be Dissolved Due To Plaintiff's Intentional Violation Of Federal Rule Of Civil Procedure 65(b)(1)(B).

On September 26, 2024, Plaintiff moved for an *ex parte* temporary restraining order including a temporary asset restraint. Dkt. 12. Due to the false urgency created by Plaintiff's filings, and i*n the absence of adversarial presentation from any of the defendants*, this Court issued a Sealed Temporary Restraining Order ("TRO") on an *ex parte* basis on October 2, 2024. Dkt. 23. On October 16, 2024, the *ex parte* TRO against Tititex was *converted* to the current preliminary injunction at Plaintiff's request. *See* Dkts. 64, 65. Notably, neither Plaintiff's *ex parte* motion for TRO nor his motion for preliminary injunction was accompanied by an attorney certification as mandated by the Federal Rule of Civil Procedure 65(b)(1)(B). *See generally* Dkts. 11-15, 25-26.

Had Plaintiff's motion for *ex parte* TRO been denied as mandated under Rule 65, there would have been no TRO to convert from when Plaintiff filed his motion for preliminary injunction. As a result, Tititex's account and asset would not have been restrained while this Court considers Tititex's opposition to the preliminary injunction.

Specifically, Federal Rule of Civil Procedure 65(b)(1) provides that:

4

> (1) Issuing Without Notice. The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney *only if*: (A) *specific facts* in an affidavit or a verified complaint *clearly* show that *immediate and irreparable* injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; **and** (B) *the movant's attorney certifies in writing any efforts made to give notice **and** the reasons why it should not be required.*

Fed. R. Civ. P. 65(b)(1). As explained above in Section II.b.ii, Plaintiff failed to present *any* "specific facts" that "clearly show that *immediate and irreparable* injury, loss, or damage will result to" him.

Moreover, Plaintiff's violation of Rule 65(b)(1)(B) is also intentional, rather than inadvertent. Plaintiff's counsel are serial filers of "Schedule A" actions in this judicial district in almost 50 cases and are more than familiar with the mandatory requirements in Rule 65(b), which forms the basis of the *ex parte* injunctive relief requested in almost every single "Schedule A" action.

Indeed, Plaintiff's *ex parte* motion for TRO in this action explicitly cites Rule 65(b) as providing that "the Court may issue an ex parte TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition." Dkt. 12 at p. 4. Yet, Plaintiff turned a blind eye to the mandatory requirement for attorney written certification in the exact same section. Furthermore, as recently as September 18, 2024—merely five days before Plaintiff's commencement of this action and eight days before Plaintiff's motion for *ex parte* TRO—Plaintiff was made aware of his failure to comply with this exact requirement in Rule 65(b) in a co-pending case in this district. *See Zhang v. "Schedule A" Defendants*, Nos. 24-cv-6834, Dkt. 71 at pp. 6-9 (N.D. Ill. October 8, 2024).

Thus, there is no excuse for Plaintiff's repeated failure to comply with the attorney certification requirement under Rule 65(b)(1)(B). Because the attorney certification requirement

5

in Rule 65(b)(1)(B) is *mandatory*, Plaintiff's intentional violation doomed the *ex parte* TRO thus the preliminary injunction converted therefrom. *See Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 438-39 (1974)("The stringent restrictions imposed . . . by Rule 65, on the availability of *ex parte* temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute."); *see, e.g.*, *Fokiss, Inc. v. TLM Glob., LLC*, No. 24-cv-14096-Moore/McCabe, 2024 U.S. Dist. LEXIS 73732, at *2-3 (S.D. Fla. Apr. 23, 2024), *adopted by* 2024 U.S. Dist. LEXIS 76395, at *1-4 (S.D. Fla. Apr. 26, 2024); *Beringer Commerce, Inc. v. Fin Cap, Inc.*, No. 5:21-CV-251-BO, 2021 U.S. Dist. LEXIS 117014, at *2 (E.D.N.C. June 23, 2021); *Nutrition & Fitness, Inc. v. Progressive Emu, Inc.*, No. 5:12-CV-192-F, 2012 U.S. Dist. LEXIS 59085, at *8-9 (E.D.N.C. Apr. 27, 2012); *Gardner-Alfred v. FRB*, No. 22-cv-1585 (LJL), 2022 U.S. Dist. LEXIS 43531, at *8 (S.D.N.Y. Mar. 11, 2022); *Dolan v. Portaro*, No. 1:15-CV-01022, 2015 U.S. Dist. LEXIS 68989, at *3 (N.D. Ohio May 28, 2015).

    d.  **The Asset Restraint Should Be Lifted Or At Least Modified.**

Because the asset restraint was part of the preliminary injunction, it should also be lifted in its entirety. However, if this Court is not inclined to dissolve the preliminary injunction, Tititex respectfully requests this Court to modify the asset restraint to be limited to be no more than Tititex's actual profits ($2,200) realized from its sales of the accused products, CHEN Decl. at ¶¶ 15-17, which would be the maximum amount of damages Plaintiff could possibly recover under an accounting of profits theory. *See Luxottica Grp. S.p.A. v. Zhiqiang Zhao*, No. 16-cv-7988, 2017 U.S. Dist. LEXIS 38527, at *21 (N.D. Ill. Mar. 17, 2017)(noting that "the purpose of the asset freeze was to help preserve the equitable remedy of an accounting for profits"); *Deckers*

*Outdoor Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 13-cv-07621, 2013 U.S. Dist. LEXIS 205985, at *5 (N.D. Ill. Oct. 30, 2013)("[W]here (as here) a litigant seeks the equitable remedy of an accounting of profits, then *if the amount of the profits is known, then the asset freeze should apply on to that specific amount, and no more*.")(emphasis added).

To the extent Plaintiff contends that he could be entitled to statutory damages that exceed Tititex's net profits, that argument is frivolous for at least two reasons.

First, the Asserted Work was registered on September 13, 2024, more than two years after its purported first publication on January 17, 2022. Because "the alleged infringement [against Tititex] commenced after publication of the Work, but before the copyright registration," Plaintiff's claims for statutory damages and attorneys' fees under the Copyright Act should be dismissed. *Milburn v. PDD Holdings, Inc.*, No. 23-cv-04785, 2024 U.S. Dist. LEXIS 112495, at *18 (N.D. Ill. June 26, 2024); 17 U.S.C. § 412; *see also* Dkt. 32 at pp. 5-6.

Second, statutory damages are *legal, not equitable, in nature*, thus is not a proper basis for imposing *any* asset restraint. *See Zorro Prods., Inc. v. Individuals*, No. 23-cv-5761, 2023 U.S. Dist. LEXIS 226550, at *9 (N.D. Ill. Dec. 20, 2023)(noting that "in Schedule A cases, the plaintiffs' bar typically seeks *remedies at law—such as statutory damages—not equitable monetary relief,*" which "affects the calculus when it comes to an asset freeze")(emphasis added). "The Supreme Court has made clear that courts lack the power to issue an asset freeze at the beginning of a case, unless that party is seeking *equitable monetary relief*." *Id.* (emphasis added); *see also Luxottica*, 2017 U.S. Dist. LEXIS 38527 at *21-22 ("[S]ince Plaintiffs are only seeking statutory damages there is no longer a reason to maintain the freeze on Defendant's PayPal account.").

### III.     CONCLUSION

For the foregoing reasons, Tititex respectfully requests this Honorable Court to dissolve the preliminary injunction and lift the asset restraint.

Respectfully Submitted,

Dated: November 11, 2024

*/s/ Zheng Gong*
Zheng Gong
Illinois Bar No. 6323959
ShinyRise PLLC
1 East Erie St., Suite 525-5203
Chicago, IL 60611
Email: zheng.gong@shinyrise.com
Phone: 312-612-0288

*/s/ Sen Wang*
Sen Wang
Illinois Bar No. 6324817
Venture Partner, LLC
401 N. Michigan Ave, Suite 1200
Chicago, IL 60611
Email: wang@venturepartner.law
Phone: 312-840-8228

*Counsel for Tititex*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing paper was filed electronically with the Clerk of the Court using the CM/ECF system on the date below, which will send notification of such filing to all counsel of record.

Date: November 11, 2024 /s/ Zheng Gong